M. L. EVANS, Appellee, v. BOARD OF SUPERVISORS OF MILLS COUNTY et al., Appellants.

**DRAINS:** Assessments—Classification of Land—Evidence. Record reviewed, and held to sustain a classification of land and the assessments levied on said lands.

*Appeal from Mills District Court.*—E. B. WOODRUFF, Judge.

NOVEMBER 11, 1924.

APPEAL from assessment of benefits in a drainage district.— *Affirmed.*

*John P. Organ* and *Carl H. Cook,* for appellants.

*Genung & Genung,* for appellee.

ARTHUR, C. J.—I.  The source of Farm Creek is in Potta-wattamie County, and it flows through that county about three and one-half miles, entering Mills County and continuing about two miles, emptying into the Nishnabotna River, which courses along the west end of the district.  The Nishnabotna River was improved, six or seven years ago, by construction of a new channel.  The valley through which Farm Creek flows is from a mile to a mile and three quarters wide, the portion in Mills County being about a mile and three quarters wide.  In this case, we are concerned with the portion of the district in Mills County. Farm Creek was a very crooked stream, of uneven width and depth, and subject to overflow, at times of any considerable rainfall.  In Mills County, it coursed across the northerly portion of the district.  The improvement of Farm Creek consisted of the construction of a new channel of uniform width and depth.  The old creek had a fall of about three and one-half feet to the mile, and the new channel has a fall of about seven feet to the mile.  The improvement, respecting the lands in Mills County lying south of the creek, was more for the purpose of preventing overflow of the lands than to facilitate drainage into the ditch constructed.  The general slope of the land in Mills County lying on the left or southerly side of the ditch is to the south and west.  Appellee's land lies in the extreme southwest corner of the district, and contains eight forties, being the north half of Section 21.  The eight forties of appellee were classified by the commissioners, one of them at 60, three of them at 50, and four of them at 40.  The forties lying north of appellee's

land in Section 16 were classified at from 50 to 85. The forties in Section 15, lying northeast of appellee's land, were classified at from 40 to 80. The four forties lying directly east of appellee's land were classified at from 30 to 50. The total assessment on appellee's land laid by the commissioners was $6,744.34. The board of supervisors approved the classification and assessment made by the commissioners, whereupon Evans, appellee here, appealed to the district court from the classification and assessment so confirmed by the board. The court modified the assessment made by the board by lowering the assessment against each of the eight forties one third, and thus reduced the classification of each forty one third. From the decree of the district court, this appeal is taken.

II. The question before the district court was, and on this appeal is, whether or not the lands of Evans have been equitably classified and assessed, as compared with other lands in the district. The district court, among other things, said:

"In the opinion of the court, the assessment of the lands of the plaintiff [Evans] is assessed too high in proportion of the benefits and the assessments of other lands, and that such gross assessment of $6,744.34 should be reduced one third, or reduced to $4,496.23."

It will serve no useful purpose to set forth the oral testimony. The greater portion of the evidence consists of records and maps. Before the improvement of Farm Creek by substituting a straight and uniform channel for the formerly very winding stream, the lands in the Farm Creek valley were frequently overflowed by water which escaped from the banks of Farm Creek at times of any considerable rainfall. We think the evidence shows that, at times of ordinary overflow, the water did not reach so far southwest as the Evans land. At times of extremely heavy rainfall and consequent overflow of the banks of Farm Creek, overflow water reached as far south and west as the Evans land, but not in as large volume as on the lands lying north of it. There is testimony of some heavy floods, occurring in former years, in which nearly the entire valley was covered with water. Considerable testimony is devoted to the effects of a flood which occurred in the fall of 1921, which is claimed to

be the heaviest flood occurring in that vicinity for many years. Appellee's land was not exempt from overflow from the adjacent lands to the northward. Appellee insists that the flood of 1921 is not a proper criterion for determining the liability of appellee's land and other lands in that vicinity to overflow, because the water which then escaped and overflowed the lands came out of the new channel, and not out of the old crooked channel, and that comparison could not properly be made. It is true that the result of the 1921 overflow should not be used as a whole test of the effect upon the lands of the district from overflows which occurred before the new channel was constructed. It would depend somewhat upon where the water broke out of the old channel in former years, and where the new channel overflowed in 1921. The record is not clear as to where the former overflows occurred, nor as to where the overflow of 1921 occurred. As nearly as we can ascertain from the record, these overflows must have occurred in practically the same places. In former years, we take it, the water broke out all along in the curves of the creek. In the fall of 1921, as, nearly as we can ascertain from the record, the water broke over at places where the new ditch crossed the old channel, where new banks had not been thrown up. We have considered the evidence as to overflows before construction of the new ditch and the evidence as to the overflow in the fall of 1921, for what we think it is worth. Some overflow, but not a large quantity of water, reached the Evans land in the flood of 1921. Appellee's land is not within the watershed of Farm Creek. Water falling on the Evans land does not drain off into Farm Creek. There is a slight ridge or high ground, as indicated by elevations given on the maps in evidence, extending west and east about half a mile north of the Evans land, a little south of the middle of Section 16 and through the northwest quarter of the southwest quarter of Section 15, then deflecting southeast, continuing across Section 15, which protected, in a considerable degree, the overflow of the land of appellee from the water which formerly escaped from Farm Creek. Also, there is high ground known as "Turner Knob," to the northeast of the Evans land, which diverts water from the Evans land. The Evans land is slightly higher than

the land lying immediately north and northeast of it. The south line of the Evans land is at the south edge of the valley, where the land rises.

The commissioners and the board of supervisors, in classifying the lands of the district and fixing the assessments thereon, recognized the location, physical conditions, and elevations of the Evans land, as compared with other lands of the district, and made the classification of the Evans land lower than that of other lands in the immediate vicinity. The court recognized these same conditions, and found that the classification and assessment of the Evans land should be reduced. Absolutely correct classification and assessment can scarcely be arrived at. Only approximation may be attained. We think the evidence warranted the reduction made by the court. We find no reason to disturb the assessment made by the court. The decree of the court reducing the assessment made by the board to the extent of one third,—that is, reducing the total assessment made by the board of $6,744.34 to $4,496.23,—which, in effect, fixed the assessment on each forty at two thirds of the assessment made by the board, and changes the classification of each forty accordingly, is affirmed.—*Affirmed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.